IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

DANIEL TEED,

        Defendant/Petitioner

Criminal No. 17-0129
Civil Action No.16-cv-385
ELECTRONICALLY FILED

**Memorandum Opinion on Motion to Vacate Sentence**

### I. Introduction

Before the Court is Defendant/Petitioner Daniel Teed's *pro se* Motion under 28 U.S.C. Section 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, the Government's Response in Opposition, and Supplemental Response thereto. Doc. 52, Doc. 57 and Doc. 58. After careful consideration of Petitioner's Motion and the Government's Responses, and the record in the case, the Court will deny Petitioner's Motion for relief pursuant to 28 U.S.C. Section 2255 as time-barred and without merit.

### II. Background

On May 15, 2007, Petitioner was charged by Information with conspiracy to commit sex trafficking of children pursuant to 18 U.S.C. Section 1594(c). Doc. 1. On June 24, 2017, Petitioner waived his right to indictment and pled guilty pursuant to a plea agreement to the Information. Doc. 12. The facts of this case reveal that Petitioner and others contacted co-actor Ralph Ruprecht via Craigslist and paid him money in order for them to participate in "gang-

1

bangs" with underage and adult women. On multiple occasions, the co-actor brought the 16-year-old victim to have sex with as many as 8-9 adult men, including Petitioner. Petitioner had sex with the underage victim approximately 3 times and actually drove her to sex acts.

On October 17, 2017, Petitioner was sentenced to 120 months of incarceration and 20 years of Supervised Release, pursuant to the parties' stipulations as set forth in their plea agreement. Doc. 35. However, as set forth in this Court's Tentative Findings and Rulings, his guideline range, based upon an offense level of 38 and a criminal history category of I actually yielded an imprisonment range of 235-293 months. Doc. 34. Following imposition of sentence, the Court released Petitioner on bond pending his report date, and he filed his appeal before the United States Court of Appeals for the Third Circuit on October 31, 2017. Doc. 39. Instead of reporting on his Bureau of Prison report date of January 5, 2018, Petitioner absconded to Arizona and on January 10, 2018, an arrest warrant was issued. Doc. 47. On February 9, 2018, the Government filed a Motion to Dismiss the Appeal based upon Petitioner's new charges. Thereafter, Petitioner was arrested on February 13, 2018 in Arizona and was removed to this Court on new charges at Criminal No. 2018-00036. Petitioner's appeal was dismissed on March 18, 2018, and he filed the instant Motion on March 17, 2020. Doc. 52. This Court issued its standard Miller Notice on March 19, 2020, and on March 24, 2020, Petitioner filed his Notice of Intent to proceed with this Motion. Doc. 54 and Doc. 56.

**III.    Standard of Review**

28 U.S.C. Section 2255 provides, in relevant part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon,

> determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

Whether to conduct a hearing is within the sound discretion of the District Court. *United States v. Lilly,* 536 F.3d 190, 195 (3d Cir. 2008); *United States v. Day,* 969 F.2d 39, 41 (3d Cir. 1992)(*quoting Government of the Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir.1989), *cert. denied* 500 U.S. 954 (1991)). In exercising that discretion, "the [C]ourt must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record. Further, the court must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." *Day,* 969 F.2d at 41-42 (citation omitted). *See also* Rules Governing Section 2255 Proceedings, Rules 4 and 8. The Court must view the factual allegations in the light most favorable to the Petitioner. *Government of the Virgin Islands v. Weatherwax,* 20 F.3d 572, 574 (3d Cir. 1994) (district court erred in failing to conduct evidentiary hearing on petitioner's non-frivolous allegations of ineffective assistance of counsel) (subsequent history omitted).

However, a Section 2255 Motion may be dismissed without a hearing if: (1) its allegations, accepted as true, would not entitle Petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact. *United States v. McCoy,* 410 F.3d 124, 134 (3d Cir. 2005) (citations omitted).

3

In order for Petitioner to establish counsel was ineffective, he has the burden to show counsel's performance (i) was in fact deficient and (ii) that the deficient performance so prejudiced the defense as to raise doubt to the accuracy of the outcome of the trial [or the sentence]; i.e., Petitioner must demonstrate a reasonable probability that, but for counsel's deficiency, the outcome of the trial [or sentence] would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 692 (1984). Counsel's conduct presumptively "falls within the wide range of reasonable professional assistance," and the Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Id.* at 689-90 (citation omitted). On the other hand, the mere fact that counsel's challenged performance or tactic can be called "strategic" in the sense it was deliberate, does not answer the dispositive question of whether that decision or tactic fell within the wide range of "reasonable professional assistance." *Davidson v. United States,* 951 F.Supp. 555, 558 (W.D.Pa. 1996), *quoting Government of the Virgin Islands v. Weatherwax,* 77 F.3d 1425, 1431-32 (3d Cir.), *cert. denied* 117 S.Ct. 538 (1996). "Reasonable trial strategy must, by definition, be reasonable." *Davidson,* 951 F.Supp. at 558.

Counsel's strategy must be judged by a standard of reasonableness based on the prevailing norms of the legal profession. *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996) (*Strickland* standards for claims of ineffective assistance of counsel unchanged under Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214). Ineffective assistance of counsel will not be found simply because, with the assistance of hindsight, the reviewing court disagrees with counsel's strategy. *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997).

4

In the context of a Section 2255 petition for collateral relief, the Unites States Court of Appeals for the Third Circuit has offered the following guidance:

> The . . . test for determining whether a hearing should be held on an ineffectiveness claim is slightly altered by the *Strickland* holding. Our analysis of allegations of ineffectiveness of counsel breaks down into two parts. First, we must determine whether the district court considered as true all of appellant's nonfrivolous factual claims. This step requires that we review whether the district court properly found certain allegations frivolous. Second, we must determine whether, on the existing record, those claims that are nonfrivolous conclusively fail to show ineffective assistance of counsel. To evaluate claims under this second step, we must turn to both prongs of the *Strickland* test. If a nonfrivolous claim clearly fails to demonstrate either deficiency of counsel's performance or prejudice to the defendant, then the claim does not merit a hearing. If, on the other hand, a claim, when taken as true and evaluated in light of the existing record, states a colorable claim for relief under *Strickland*, then further factual development in the form of a hearing is required. That is, if a nonfrivolous claim does not conclusively fail either prong of the *Strickland* test, then a hearing must be held. Thus, the district court must employ the *Strickland* analysis at least once, and may have to employ it twice--first, as a threshold analysis of all claims on a limited record, and then again only on colorable claims after full factual development of those claims.

*United States v. Dawson,* 857 F.2d 923, 927-28 (3d Cir. 1988). Under the first prong of the *Strickland* test, "an attorney renders ineffective assistance when his performance 'f[alls] below an objection standard of reasonableness,' given the particular circumstances of the case at hand." *Hodge v. U.S.,* 554 F.3d 372, 379 (3d Cir. 2009)(quoting *Strickland,* 466 U.S. at 688). As in any other ineffective assistance of counsel context, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. The Court must employ a highly deferential standard, which entails "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Hankerson,* 496 F.3d 303, 310 (3d Cir. 2007)(quoting *Strickland,* 466 U.S. at 689). To rebut this presumption, a Petitioner "must show either that: (1) the suggested strategy (even if sound) was

not in fact motivating counsel, or (2) that the actions could never be considered part of a sound strategy." *Thomas v. Varner*, 428 F.3d 491, 499 (3d Cir. 2005). Under the second prong (i.e., the prejudice prong), Petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a 'probability sufficient to undermine confidence in the outcome.'" *Hankerson*, 496 F.3d at 310 (quoting *Strickland*, 466 U.S. at 694).

## IV. Discussion

In Petitioner's (belated) Motion to Vacate filed on March 17, 2020, he now alleges that: (1) he "would never have retained attorney Walker" if he had known of the alleged conflict of interest of his attorney, Doc. 52 at 2, 4-5; (2) his attorney "did not object to the misapplication of the Guidelines, and failed to appeal from the error," Id. at 5; and (3) that his attorney falsely told that he would "receive an additional 20 year term of imprisonment if he continued with the appeal," Id. at 6.

The Court need not reach the merits of these issues because under 28 U.S.C. § 2255(f)(1), there is a statute of limitations which requires that Petitioner file his or her motion to vacate within one year of the date on which the conviction becomes "final". When a direct appeal is decided, a conviction becomes final when the ninety (90) days to file a petition for certiorari expires. *Clay v. United States*, 537 U.S. 522, 527, 532 (2003); see also *Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999) (holding the judgment of conviction becomes final upon "the expiration of the time allowed for certiorari review by the Supreme Court."). If, as here, a case also becomes final ni3nety (90) days after a defendant withdraws his or her appeal, the current motion was due on June 28, 2019. On March 27, 2019, over nine (9) months later, Petitioner now petitions this Court to vacate his sentence, which is time-barred. To the extent Petitioner argues that Section 2255(f)(4), which states that the petition must be filed by the date on which facts could be discovered through the exercise of "due diligence," governs this scenario, the Court finds that Petitioner fails to demonstrate facts supporting a contention that he could not have made his arguments earlier in the exercise of "due diligence."

Setting aside for the moment that Petitioner's Motion to Vacate is time-barred, which it undoubtedly is, the merits of his arguments of ineffectiveness of his counsel are baseless and do

7

not come close to presenting facts that would justify a hearing. The Government emphasizes in its response and the Court agrees with the following: (1) Petitioner states in Doc. 52 that he knew all of the facts that led to his conclusion that his attorney had a conflict of interest and then still decided to select him to represent him; (2) after he fled Pennsylvania and was arrested in Arizona on his new charges, Attorney Walker again represented him without objection from Petitioner; (3) defense counsel did object to several guideline determinations and did file an appeal on Petitioner's behalf.  See, e.g., Docs. 24 and 39.

As to point three (3) immediately above, the United States Court of Appeals for the Third Circuit most recently made a ruling on the issue Petitioner raises in favor of this Court's prior guideline determination in its Tentative Findings and Rulings. With respect to the Court's calculation of his offense level, Petitioner based his entire position on the Ninth Circuit's decision in *United States v. Wei Lin*, 841 F.3d 823 (9th Cir. 2016). The Government's supplemental response to Petitioner's Motion indicated that this exact offense level issue was ruled upon in *United States v. Jamiell Sims*, 19-1172.  On April 24, 2020, the Court of Appeals for the Third Circuit issued a precedential opinion in that matter finding that that the Ninth Circuit's decision in *Wei Lin* "would lead to absurd results," *United States v. Sims*, 19- 1172, Doc. 56 at 5 (3d Cir. Apr. 20, 2020). The Honorable Circuit Judge Hardiman determined that it is "clear" that the Base Offense Level is 34 and not the much lower level determined by Wei Lin and advanced by the current Petitioner is appropriate. Id. at 7.

Fourth, and finally, Petitioner acknowledges that he "agreed to withdraw the appeal." Doc. 52 at 3.  He did so on March 27, 2018, more than three (3) weeks after his March 1, 2018 arraignment at new case 18-36 and six (6) weeks after his court appearances in Arizona (where he was arrested after failing to appear for the service of his sentence).  Petitioner's contention

that his attorney told him that he would get a mandatory consecutive 20-year sentence is belied by the standard information provided to him about his potential sentences by the Arizona and Pennsylvania Courts.

### V.     Conclusion

Again, Petitioner's Motion to Vacate is time-barred.  As for the merits of Petitioner's arguments of ineffectiveness, in order for him to establish counsel was ineffective, he has the burden to show counsel's performance: (i) was in fact deficient, and (ii) that the deficient performance so prejudiced the defense as to raise doubt to the accuracy of the outcome of the trial [or the sentence]; i.e., Petitioner must demonstrate a reasonable probability that, but for counsel's deficiency, the outcome of the trial [or sentence] would have been different. *Strickland*, 466 U.S. 668, 687, 692 (1984).   Petitioner has failed to meet his burden in all regards, and no hearing thereon is warranted on the merits of the issues because counsel is not ineffective for failing to raise meritless arguments, as would have been the case here.

For all of the foregoing reasons, this Court will deny Petitioner's Motion to Vacate under 28 U.S.C. Section 2255 and a Certificate of Appealability will be denied. An appropriate order follows.

s/Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc:  All Registered ECF Counsel and Parties

Daniel Teed  
38472-068  
ALLENWOOD  
FEDERAL PRISON CAMP  
Inmate Mail/Parcels  
P.O. BOX 1000  
WHITE DEER, PA 17887

PRO SE